UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JINNO INTERNATIONAL CO., <br><br> Plaintiff, <br><br> -against- <br><br> JINNO INTERNATIONAL USA, LLC <br> and <br><br> CHRISTOPHER CARLUCCI, <br><br> Defendants. | Case No. <br><br> **COMPLAINT** <br><br> **(ECF CASE)** |

Plaintiff Jinno International Co. ("Jinno International" or "Plaintiff"), by its attorneys, Davis & Gilbert LLP, for its Complaint against defendants Jinno International USA, LLC ("Jinno USA") and Christopher Carlucci ("Carlucci" and, together with Jinno USA, "Defendants"), alleges as follows:

## NATURE OF ACTION

1.      This is an action for trademark infringement, unfair competition, breach of contract, conversion, breach of fiduciary duty, unjust enrichment, and fraud, arising out of an agreement in which Jinno International authorized Carlucci to form Jinno USA to serve as Jinno International's exclusive United States-based sales agent.  Based in Korea and named after its owner, Jin-yong Choi (who uses the name "Jinno" in English), Jinno International is a well-respected manufacturer and supplier of high-quality fabrics to the apparel industry, having developed and served a substantial roster of customers in the United States and worldwide since 2002.

2.      In 2012, Jinno International authorized Carlucci to form Jinno USA for the sole

and exclusive purpose of procuring and facilitating sales of Jinno International's products.  In

exchange for operating its sales office, Jinno International agreed to: (1) grant Carlucci and Jinno

USA a license to use Jinno International's JINNO and JINNO INTERNATIONAL trademarks

(the "JINNO Marks"); (2) pay commissions on all sales facilitated by Jinno USA; and (3) pay all

of Jinno USA's operating expenses.

3.      Under the parties' agreement, all revenues generated from customer sales were

the property of Jinno International, which manufactured all of the products and shipped them

directly to customers from its factory in Korea.  In most cases, customers paid Jinno

International directly because the invoices Jinno USA issued were payable to Jinno

International's bank account in Korea.  In some cases, customers instead paid Jinno USA, which

held the funds in trust for Jinno International and then remitted payment after deducting

commissions and operating expenses (for the parties' convenience).

4.      In March 2018, Jinno International terminated the parties' agreement because,

among other reasons, Carlucci and Jinno USA had been misappropriating Jinno International's

funds.  Despite multiple demands, Defendants had failed and refused to remit $234,900 in *known*

funds that Jinno USA had received in trust for Jinno International.  Moreover, Defendants failed

to disclose that they had received – and had failed to remit – a significant amount of additional

funds belonging to Jinno International.  In total, Jinno USA and Carlucci have misappropriated

more than $750,000 in funds belonging to Jinno International.

5.      Furthermore, and unbeknownst to Jinno International, Defendants fraudulently

and unjustly enriched themselves by facilitating fabric sales on behalf of other international

fabric mills, including competitors of Jinno International.  Jinno International authorized use of

the JINNO Marks and paid operating expenses in exchange for Jinno USA *exclusively* facilitating sales for Jinno International – and certainly not servicing competing mills.  Upon information and belief, Jinno USA and Carlucci hid their misconduct – and unjustly enriched themselves at Jinno International's expense – by, among other things: (1) doctoring invoices to remove information about non-Jinno International sales; and (2) hiding binders and other information about such sales when Jinno Choi visited Jinno USA's office.

6.      Defendants' misconduct has continued following termination of the parties' agreement.  Despite the termination of its license, Jinno USA has continued to use the JINNO Marks, which is likely to cause confusion in the marketplace and is damaging Jinno International's business and reputation.  Jinno International seeks an injunction barring any further use of the JINNO Marks.  Jinno International also seeks damages in an amount to be determined at trial arising from Jinno USA's and Carlucci's liability for: (1) trademark infringement; (2) unfair competition; (3) breach of contract; (4) conversion; (5) breach of fiduciary duty; (6) unjust enrichment; and (7) fraud.

## **PARTIES**

7.      Plaintiff Jinno International is a company formed pursuant to the laws of the Republic of Korea, with its principal place of business at 307 Seongseodong-ro, Dalseo-gu, Daegu, 42697, Korea (previously 180-30, Janggi-dong Dalseo-gu, Daegu, 704-944, Korea). Jinno International runs a fabric mill in Korea from which it manufactures fabrics and supplies and distributes fabrics throughout the world, including in the United States, under the JINNO Marks.

8.      Upon information and belief, Jinno USA is a limited liability company formed pursuant to the laws of the State of Delaware, with its principal place of business at 202 West

40th Street, Suite 1601, New York, NY 10018.  Jinno USA acted as the U.S. sales office for Jinno International from in or about April 2012 until March 28, 2018.

9.      Upon information and belief, Carlucci is an individual who is domiciled in the State of New York.  Upon information and belief, Carlucci has been the principal of Jinno USA since 2012.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1121, 1331, 1338(a), and 1338(b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

11.      This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because Plaintiff is a citizen of Korea, and, upon information and belief, Jinno USA is a citizen of Delaware and New York and Carlucci is a citizen of New York, and the matter in controversy exceeds $75,000 exclusive of interests and costs.

12.      This Court has personal jurisdiction over Defendants pursuant to NY CPLR 301 and 302 because, upon information and belief, Jinno USA has its principal place of business in the State of New York and Carlucci is a citizen of the State of New York; because Defendants transacted business within the State of New York; and because Defendants own, use, or possess real property situated in the State of New York.

13.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because, upon information and belief, both Defendants reside in this District.  Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Jinno International's claims occurred in this District.  In addition, venue is proper in this District

pursuant to 28 U.S.C. § 1391(b)(3) because Defendants are subject to the personal jurisdiction of this Court.

## FACTUAL ALLEGATIONS

**Jinno International and the JINNO Marks**

14.     Established in 2002 and based in Korea, Jinno International is a manufacturer and supplier of wholesale fabrics, primarily to the apparel industry.  Through significant expenditure of time and funds over many years, Jinno International, named after its owner, Jin-yong (Jinno) Choi ("Choi"), has developed a strong reputation as a respected and reliable manufacturer and supplier of high-quality fabrics to customers in the United States and throughout the world.

15.     From at least as early as 2002 to the present, Jinno International has continuously used the JINNO Marks – JINNO and JINNO INTERNATIONAL – in connection with its wholesale fabric business in the United States and worldwide.  Since at least as early as 2002, Jinno International has been doing business in the United States as Jinno International or Jinno. Over the years, Jinno International has developed relationships and worked with a significant number of customers, primarily manufacturers and retailers of apparel.  These customers know Jinno International as "Jinno International" or just "Jinno" for short.

16.     In 2003, Jinno International registered the domain name for its website, www.jinnointl.com.  From 2003 to the present, Jinno International has continuously owned and operated this website.

17.     Jinno International's fabrics have the mark JINNO INTERNATIONAL printed on their selvage (the edge of the fabrics), and fabric samples that Jinno International provides to customers are affixed with a sticker label bearing the mark JINNO INTERNATIONAL.  Since at least as early as 2009, Jinno International has been printing and/or affixing the JINNO

INTERNATIONAL mark on its fabrics and fabric samples.  Since at least as early as 2002, Jinno International had been printing or affixing the JINNO mark on its fabrics and fabric samples.

18.     In addition, the mark JINNO INTERNATIONAL is registered in Korea and owned by Choi (Registration Number 4010145500000, International Class 24 (fabrics)).  This registration, duly and legally issued by the Korean Intellectual Property Office, is valid and subsisting.

19.     The JINNO Marks have become, through widespread and favorable public acceptance and recognition, an asset of substantial value as a symbol of Jinno International, its high-quality products, and its goodwill.  Due to their extensive use in the United States over many years, customers strongly associate the JINNO Marks with Jinno International.

**The Parties' Agreements**

20.     Jinno International works directly with customers, as well as with sales agents in the United States and elsewhere, to procure sales and facilitate the placement and shipment of orders.  In or around 2011, Jinno International began working with defendant Carlucci when he worked as a salesman for a company that at that time provided services to Jinno International in the United States.

21.     In or around March 2012, shortly after that company announced that it was winding down its operations, Choi and Carlucci agreed that a business entity should be formed for the sole and exclusive purpose of procuring and facilitating sales of Jinno International products to customers in the United States.  Accordingly, in 2012, Jinno USA was formed, and Jinno International, Carlucci, and Jinno USA entered into an agreement pursuant to which Jinno USA served as Jinno International's exclusive U.S. sales office.  At all times relevant to this

Complaint, Carlucci represented that he owned and controlled Jinno USA and controlled Jinno USA's operations.

22.     In exchange for Jinno USA serving as its sales office, Jinno International agreed to pay all of Jinno USA's operating expenses, as well as commissions on sales procured or facilitated by Jinno USA.  Jinno International also granted Jinno USA a nonexclusive, revocable license to use the "Jinno International" company name and the JINNO Marks while Jinno USA served as Jinno International's U.S. sales office.

23.     Under the agreement, all revenues generated from customer sales belonged to and were the exclusive property of Jinno International.  Jinno International manufactured and produced in Korea all fabrics that were sold to customers.  Jinno International directly shipped all such fabrics to its customers from its facility in Korea.  Customer invoices were payable directly to Jinno International's bank account in Korea.  And, although customers sometimes sent payment for these invoices to Jinno USA, all such funds belonged to Jinno International and were held in trust by Jinno USA on Jinno International's behalf.

24.     Jinno International and Defendants understood and agreed that Jinno USA was to serve exclusively as Jinno International's sales agent; that Jinno USA would not act as any other international fabric mill's sales agent; and that all of Jinno USA's work was to be performed exclusively for Jinno International's benefit.  In the absence of such an agreement or understanding, Jinno International would not have agreed to pay all of Jinno USA's operating costs or granted Jinno USA a license to use the "Jinno" company name and the JINNO Marks.

25.     In or about April 2012, Jinno USA began serving as Jinno International's U.S. sales office, and it continued to do so until Jinno International terminated the parties' agreements on March 28, 2018.

**The Parties' Course of Conduct**

26.     The parties' course of conduct regarding the processing of customer payments demonstrates that such payments were the property of and belonged to Jinno International, and not to Jinno USA.  Jinno USA issued invoices for sales of products to Jinno International's customers.  The invoices were typically sent on Jinno USA letterhead, but they were payable directly to Jinno International's bank account in Korea (and not to Jinno USA).  Accordingly, most customers made direct payments to Jinno International in Korea.  Some customers paid Jinno USA.  In those cases, Jinno USA held the funds in trust for Jinno International.

27.     At the outset of the relationship, the parties agreed that it would reduce the number of back-and-forth transactions and be mutually beneficial if Jinno USA remitted Jinno International funds on a monthly basis after deducting Jinno USA's commissions and operating expenses.

28.     Consistent with this agreement, the parties engaged in the following payment practice from in or about April 2012 to in or about February 2018.  When customers paid Jinno USA for invoices for Jinno International's products, Jinno USA deposited the funds into a Jinno USA bank account.   Each month, Jinno USA's accountants sent Jinno International an accounting statement setting forth: (1) Jinno USA's operating expenses and commissions for the month; (2) the sum of all payments Jinno USA received directly from customers that month; and (3) a calculation of how much Jinno USA was required to remit to Jinno International, essentially reflecting customer receipts less expenses and commissions.   Jinno USA then wired the difference to Jinno International each month.

29.     The funds Jinno USA received from customers were unquestionably Jinno International's property.  Indeed, the monthly accounting provided by Jinno USA's accountants

routinely stated: "Total commission owed to us comes to $[amount] and we collected $[amount] *for you* during the period."  (Emphasis added).

**Jinno International Terminates its Relationship with Jinno USA**

30.    Despite its obligation to remit all funds collected on Jinno International's behalf (less agreed upon deductions), Jinno USA failed to do so during much of 2017 and into 2018. As of March 28, 2018, Jinno USA owed Jinno International $234,900 in *known* customer payments that Jinno USA had received through February 13, 2018.  Jinno International repeatedly asked Jinno USA to remit all amounts held in trust for Jinno International, but Jinno USA failed to do so.

31.    As a result of Jinno USA's failure to remit these funds (among other significant issues), Jinno International terminated its relationship with Jinno USA.  By letter dated March 28, 2018 (the "Termination Letter"), Jinno International terminated its agreements and relationship with Defendants and stated, among other things, that it would no longer cover Jinno USA's operating expenses.  Jinno International also demanded that Jinno USA: (i) immediately pay the outstanding $234,900 balance of known customer payments; (ii) remit all other customer payments Jinno USA received on Jinno International's behalf prior to the date of the Termination Letter; and (iii) remit all customer payments received by Jinno USA on Jinno International's behalf after March 28, 2018.

32.    Jinno International further demanded that Jinno USA return all of Jinno International's property, including, but not limited to, office and computer equipment, a computer server, fabrics, quality headers, physical sample hangers, and selling materials (collectively, the "Property").

33.     In addition, Jinno International demanded in the Termination Letter that Jinno USA: (i) "immediately cease representing [itself] as an authorized agent of Jinno [International] for any purpose and cease implying any association and/or affiliation to Jinno [International]"; (ii) promptly cease use of the trademark or brand name "Jinno" or any other name that is confusingly similar to "Jinno"; (iii) promptly execute and file all necessary and appropriate documents to change the company name of Jinno USA to a name that is not similar to "Jinno"; (iv) promptly destroy all printed materials that refer to "Jinno"; and (v) cease use of all digital files belonging to Jinno International.

34.     Jinno International also informed Jinno USA that it intended to inform Jinno International's customers that it had terminated its relationship with Jinno USA and that Jinno USA no longer serves as a sales office or representative of Jinno International.

35.     Jinno USA has failed and refused to comply with Jinno International's demands.

**Jinno USA's Unauthorized Use of the JINNO Marks**

36.     Following the March 28, 2018 termination of the parties' agreements, including the license to use the JINNO Marks, Jinno International has not authorized, licensed, permitted, or otherwise ratified Jinno USA's use of the "Jinno International" company name or the JINNO Marks.

37.     Nevertheless, Jinno USA has continued to operate under the "Jinno International" company name and use the JINNO Marks in commerce in connection with, among other things, providing services for other fabric and textile companies.  As a result of these actions, customers mistakenly believe, and/or are likely to mistakenly believe, that Jinno USA and its products and/or services are authorized by, come from, are sponsored by, and/or are affiliated with Jinno

International, when that is not the case.  Jinno USA's actions have damaged, and are continuing to damage, Jinno International's business.

38.     For example, in April 2018, Jinno USA filed two copyright infringement lawsuits alleging that various defendants infringed Jinno USA's purported rights in certain fabric designs. Because of one of these lawsuits, a Jinno International customer has canceled a previously placed order with Jinno International and has stated that it will not conduct business at this time with Jinno International.  Upon information and belief, this customer is refusing to do further business with Jinno International because it mistakenly believes that Jinno USA and Jinno International are one and the same or that Jinno USA remains affiliated with Jinno International, when that is not the case.

39.     Jinno USA continues to use the "Jinno International" company name and the JINNO Marks with actual knowledge of Jinno International's prior rights in the "Jinno International" company name and JINNO Marks and, upon information and belief, with the intent to confuse customers and to trade off of Jinno International's investment in its well-known JINNO Marks in willful disregard of Jinno International's rights.

40.     As a result of Defendants' actions, Jinno International has suffered irreparable injury to its goodwill and business reputation.  Jinno International will continue to suffer irreparable injury and harm if Defendants are not restrained by this Court from further violation of the rights alleged herein since Jinno International has no adequate remedy at law.

41.     Unless Defendants are restrained by this Court, customers will believe that Jinno USA's goods and services are sponsored by, approved by, affiliated with, or associated with Jinno International, when this is not the case.

**Defendants Have Wrongfully Withheld More Than $750,000**

42.     Following the termination of the parties' relationship, Jinno International discovered that Defendants had misled Jinno International about the extent to which they had failed to remit funds held in trust on Jinno International's behalf.  Prior to termination of the parties' relationship, Defendants had informed Jinno International about a number of invoices for which Jinno USA had not, according to Defendants, received payments from customers.  In many cases, these statements were false because Jinno USA had, in fact, received payments but had chosen to withhold this information from Jinno International.

43.     Defendants have wrongfully withheld and failed to remit more than $750,000 in funds that Jinno USA received from Jinno International customers and held in trust for Jinno International's benefit.  Jinno International has demanded that Defendants turn these funds over to Jinno International, but Defendants have failed and refused to do so.

**Defendants Misled Jinno International About Services Performed for Other Mills**

44.     At the outset of their relationship, the parties agreed and understood that Jinno USA was to serve exclusively as Jinno International's sales agent and that all of Jinno USA's work was to be performed for Jinno International's benefit.  Defendants knew and understood that Jinno International would have terminated the license to use the JINNO Marks and would not have continued to pay all of Jinno USA's operating expenses if Jinno International knew that Jinno USA had procured sales for other international fabric mills or otherwise performed services that were not exclusively for Jinno International's benefit.

45.     After terminating the parties' relationship, Jinno International discovered that Jinno USA had continuously breached the parties' agreements and understandings by surreptitiously acting as a sales agent for other international fabric mills beginning in or about

April 2012 and continuing until the parties' relationship terminated and thereafter.  In fact, Carlucci and employees of Jinno USA spent portions of each or most work days facilitating orders for other international fabric mills, with approximately 20-30% of Jinno USA's total business attributable to work performed on behalf of other international fabric mills.

46.     Jinno International was unaware of Defendants' misconduct.  In fact, Defendants made false statements and took affirmative steps throughout the parties' relationship to hide from Jinno International the fact that they were doing business with other international fabric mills. These steps included, but were not limited to: (i) falsifying invoices to prevent Jinno International from finding out that Jinno USA was doing business with other mills; (ii) falsely telling Choi that Jinno USA was not working with or performing services for any other factories or mills, even when Choi directly asked Carlucci if Jinno USA was doing business with other international fabric mills; (iii) hiding products, binders containing purchase orders, hangers, and other information relating to other mills when Choi visited Jinno USA's office in or about January 2013 and in or about June 2017; and (iv) instructing their employees not to mention to Choi the fact that Jinno USA was doing business with other international fabric mills and, if asked by Choi, to deny it.

47.     Jinno International relied on Defendants to provide truthful and accurate information about the manner in which Jinno USA was conducting business on Jinno International's behalf, and further relied on Defendants not to withhold material information, particularly with respect to conducting business on behalf of any other international mills.

48.     Throughout the parties' relationship, Jinno USA also registered copyrights in fabric designs in its own name, while failing to inform Jinno International, knowing full well that

all such designs were developed with Jinno International funds and for Jinno International's benefit.

49.     As a result of Defendants' false statements and material omissions, Jinno International continued for years to pay Jinno USA's operating expenses and to continue Jinno USA's license to use the JINNO Marks, when it would have terminated the parties' agreements sooner had it known about Defendants' actions.

50.     As a result of Defendants' acts and omissions, Jinno International has been damaged, and Defendants were unjustly enriched, earning significant revenues that did not inure to Jinno International's benefit, even though Defendants were using the JINNO Marks and Jinno International was paying all of Jinno USA's operating costs.

**FIRST CAUSE OF ACTION**
**(Trademark Infringement under Section 43 of the Lanham Act)**

51.     Plaintiff hereby realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

52.     Jinno International uses the JINNO Marks in commerce in the United States in connection with its fabric business.  The JINNO Marks are valid and subsisting.

53.     Jinno International's use in commerce of the JINNO Marks is senior to Defendants' unauthorized use in commerce of the JINNO Marks.

54.     Defendants' use of the JINNO Marks constitutes trademark infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), because it is likely to cause confusion, to cause mistake, and/or to deceive as to the affiliation, connection, or association of Jinno USA with Jinno International, or as to the origin, sponsorship, or approval of Jinno USA's products, services, and commercial activities by Jinno International, all to the damage and detriment of Jinno International's reputation and goodwill.

55.     Defendants have used and continue to use the infringing marks despite having received actual notice of Jinno International's rights in the Termination Letter.

56.     Irreparable harm to Jinno International is imminent as a result of Defendants' conduct, and Jinno International is without an adequate remedy at law.  Jinno International is thus entitled to an injunction restraining Carlucci and Jinno USA, its officers, agents, employees, representatives, servants, successors, assigns, and all persons, firms, corporations, or entities either acting directly or indirectly in concert with it or under its direction, control, or authority, from engaging in further such infringing acts.

57.     Upon information and belief, and as evidenced in part by Defendants' refusal to cease unauthorized use of the JINNO Marks after receiving correspondence from Jinno International and its counsel, Defendants' acts were done intentionally and with knowledge of Jinno International's rights and, thus, constitute deliberate and willful trademark infringement under 15 U.S.C. § 1117(a).

58.     As a result of Defendants' infringing acts, Jinno International has sustained and continues to sustain damages in an amount to be determined at trial, plus interest, costs, and attorneys' fees.

**SECOND CAUSE OF ACTION**
**(Unfair Competition and False Designation of Origin**
**under Section 43(a) of the Lanham Act)**

59.     Plaintiff hereby realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

60.     Defendants' use of the JINNO Marks in commerce without Jinno International's consent constitutes false designation of origin and unfair competition under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  Defendants' unauthorized use of the JINNO Marks is likely

to cause confusion, to cause mistake, and/or to deceive as to the affiliation, connection, or association of Jinno USA with Jinno International, or as to the origin, sponsorship, or approval of Jinno USA's products, services, and commercial activities by Jinno International, all to the damage and detriment of Jinno International's reputation and goodwill.

61.     Irreparable harm to Jinno International is imminent as a result of Defendants' conduct, and Jinno International is without an adequate remedy at law.  Jinno International is thus entitled to an injunction restraining Carlucci and Jinno USA, its officers, agents, employees, representatives, servants, successors, assigns, and all persons, firms, corporations, or entities either acting directly or indirectly in concert with it or under its direction, control, or authority, from engaging in further such infringing acts.

62.     Upon information and belief, and as evidenced in part by Defendants' refusal to cease unauthorized use of the JINNO Marks after receiving correspondence from Jinno International and Jinno International's counsel, Defendants' acts were done intentionally and with knowledge of Jinno International's rights and, thus, constitute a deliberate and willful violation under 15 U.S.C. § 1117(a).

63.     As a result of Defendants' false designation of origin and unfair competition, Jinno International has sustained and continues to sustain damages in an amount to be determined at trial, plus interest, costs and attorneys' fees.

### THIRD CAUSE OF ACTION
**(Common Law Trademark Infringement)**

64.     Plaintiff repeats and realleges the allegations stated in the preceding paragraphs of the Complaint as if set forth fully herein.

65.     The JINNO Marks are valid and subsisting trademarks under the common law of New York.

66.     Jinno International's use in commerce of the JINNO Marks is senior to Defendants' unauthorized use in commerce of the JINNO Marks.

67.     Defendants' use of the JINNO Marks without Jinno International's consent constitutes trademark infringement under the common law of New York.

68.     Irreparable harm to Jinno International is imminent as a result of Defendants' conduct, and Jinno International is without an adequate remedy at law.  Jinno International is thus entitled to an injunction restraining Carlucci and Jinno USA, its officers, directors, agents, employees, representatives, and all other persons acting in concert with them, from engaging in further such infringing acts.

69.     Upon information and belief, and as evidenced in part by Defendants' refusal to cease unauthorized use of the JINNO Marks after receiving correspondence from Jinno International and its counsel, Defendants' acts were done intentionally and with knowledge of Jinno International's rights.

70.     As a result of Defendants' infringement, Jinno International has sustained and continues to sustain damages in an amount to be determined at trial, plus interest, costs and attorneys' fees.

**FOURTH CAUSE OF ACTION**
**(Common Law Unfair Competition)**

71.     Plaintiff repeats and realleges the allegations stated in the preceding paragraphs of the Complaint as if set forth fully herein.

72.     Defendants' use of the JINNO Marks without Jinno International's consent constitutes unfair competition under the common law of New York.

73.     Irreparable harm to Jinno International is imminent as a result of Defendants' conduct, and Jinno International is without an adequate remedy at law.  Jinno International  is

thus entitled to an injunction restraining Carlucci and Jinno USA, its officers, agents, employees, representatives, servants, successors, assigns, and all persons, firms, corporations, or entities either acting directly or indirectly in concert with it or under its direction, control, or authority, from engaging in further such infringing acts.

74.     Upon information and belief, and as evidenced in part by Defendants' refusal to cease unauthorized use of the JINNO Marks after receiving correspondence from Jinno International and its counsel, Defendants' acts were done intentionally and with knowledge of Jinno International's rights.

75.     As a result of Defendants' unfair competition, Jinno International has sustained and continues to sustain damages in an amount to be determined at trial, plus interest, costs and attorneys' fees.

### FIFTH CAUSE OF ACTION
### (Breach of Contract – Nonpayment of Funds)

76.     Plaintiff hereby realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

77.     The agreement made between Jinno International and Defendants is a valid, binding, and enforceable contract between the parties.

78.     Pursuant to the parties' agreement, Defendants agreed that all revenues generated from customer sales were the property of Jinno International.  Where customers paid Jinno USA instead of Jinno International directly, Jinno USA held the funds in trust for Jinno International and then remitted payment to Jinno International after deducting commissions and operating expenses.

79.     Jinno International fully performed all of its duties and responsibilities pursuant to the parties' agreement.

80.     Despite Jinno International's demands, and in breach of the agreement, Defendants have failed to remit to Jinno International more than $750,000 in funds paid by customers that belong to Jinno International.

81.     As a result of Jinno USA's breach, Jinno International has sustained damages in an amount to be determined at trial, but no less than $750,000, plus interest and costs.

### SIXTH CAUSE OF ACTION
**(Conversion)**

82.     Plaintiff hereby realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

83.     Defendants have failed to remit customer funds that they received as payment for invoices for Jinno International's products and failed to return the Property, all of which are rightfully owed to and owned by Jinno International.

84.     Jinno International has the right to possession of the customer funds because the payments that Jinno USA received directly from customers for Jinno International's products are the property of Jinno International.  Jinno International has the right to possession of the Property because Jinno International provided the Property to Jinno USA for use as its sales agent in the United States, but Jinno International terminated this relationship on March 28, 2018.

85.     From March to April 2018, Jinno International duly and repeatedly demanded that Defendants return the customer funds and the Property that they had wrongfully retained.

86.     At no time did Defendants obtain any ownership interest in or right to maintain possession of the customer funds and the Property, nor did Defendants obtain a legitimate basis to refuse to return the customer funds and the Property to Jinno International.

87.     To date, Defendants have knowingly and intentionally retained, exerted unauthorized control over, and refused to return the customer funds and the Property belonging to Jinno International.

88.     Defendants' unlawful retention of Jinno International's customer funds and Property for their own use constitutes conversion.

89.     As a result of Defendants' conversion of the customer funds and Property belonging to Jinno International, Jinno International has sustained damages in an amount to be determined at trial, but no less than $750,000, plus interest and costs.

90.     In addition, Defendants' actions were wanton, intentional, and willful and therefore warrant the imposition of punitive damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Breach of Fiduciary Duty)

91.     Plaintiff hereby realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

92.     When customers paid Jinno USA for products manufactured and shipped by Jinno International, Jinno USA held those funds in trust for Jinno International and was supposed to remit the funds to Jinno International (less operating expenses and commissions).   Thus, a fiduciary relationship existed between Defendants and Jinno International during their relationship, as Defendants were under a duty to act for Jinno International's benefit upon matters within the scope of their relationship.

93.     Defendants, while owing fiduciary duties to Jinno International, misappropriated the customer funds that they held in trust for Jinno International and failed to remit those funds to Jinno International.

94.     By reason of the foregoing, Defendants breached their fiduciary duties to Jinno International.

95.     As a result of Defendants' breach of their fiduciary duties to Jinno International, Jinno International has sustained damages in an amount to be determined at trial, but no less than $750,000, plus interest and costs.

96.     In addition, Defendants' actions were wanton, intentional, and willful and therefore warrant the imposition of punitive damages in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**(Unjust Enrichment)**

97.     Plaintiff hereby realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

98.     Throughout the parties' relationship, from in or about April 2012 until March 28, 2018, Jinno International paid Defendants' operating expenses in full and allowed Defendants to use the "Jinno" company name and the JINNO Marks under a license.

99.     Jinno International paid Defendants' operating expenses and allowed Defendants to use the "Jinno" company name and the JINNO marks because Jinno International reasonably expected that Defendants were acting exclusively as Jinno International's sales agent, working solely on its behalf and for its benefit.

100.    Jinno International would never have paid Defendants' operating expenses in full or allowed Jinno USA to use the "Jinno" company name and the JINNO Marks if Defendants were also facilitating sales for other international fabric mills, including Jinno International's competitors.

101.   But, throughout the parties' relationship, from in or about April 2012 until March 28, 2018, Defendants did facilitate sales for multiple other international fabric mills, and Defendants hid their unauthorized work from Jinno International, as detailed herein.

102.   By failing to work exclusively as the sales agent for Jinno International and wrongfully facilitating sales for other international fabric mills, Defendants have been unjustly enriched at Jinno International's expense in an amount to be determined at trial, plus interest and costs.

103.   It is against equity and good conscience to permit Defendants to retain the full amount of the operating expenses that Jinno International paid Defendants; profits that Defendants received from their unauthorized work for other international fabric mills; and revenues associated with copyrighted fabric designs that Defendants created for Jinno International's benefit.

## NINTH CAUSE OF ACTION
### (Fraud)

104.   Plaintiff hereby realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

105.   Defendants intentionally made misrepresentations about material facts and omitted material facts concerning the exclusivity of the parties' relationship from Jinno International.

106.   Specifically, Defendants falsified invoices to prevent Jinno International from finding out that Jinno USA was doing business with other mills, and Defendants falsely told Choi that Jinno USA was not working with or performing services for any other factories or mills, even when Choi directly asked Carlucci if Jinno USA was doing business with other international fabric mills

22

107.    In addition, during the parties' discussions in April 2012 leading up to their agreement that Carlucci would form Jinno USA to serve as the U.S. sales office for Jinno International, Carlucci did not disclose – in fact, Carlucci actively concealed – that Defendants would not be acting exclusively on behalf of Jinno International.

108.    Further, throughout the parties' relationship, from in or about April 2012 until March 28, 2018, in numerous conversations Defendants failed to disclose – in fact, they actively concealed – that Defendants were also facilitating sales on behalf of other international fabric mills, including Jinno International's competitors.

109.    The exclusivity of the parties' relationship was a material fact, as Jinno International agreed to pay Defendants' operating expenses in full and allowed Defendants to use the "Jinno" company name and the JINNO Marks under a license only because Jinno International believed that Defendants would facilitate sales only on Jinno International's behalf and would not be facilitating sales on behalf of any other international fabric mills.

110.    Defendants knew that its false representations and its omissions were material and misleading because Defendants began facilitating sales for other international fabric mills as soon as they became the sales agent for Jinno International in or about April 2012 and continued to do so until on or about March 28, 2018.  Defendants made these misrepresentations and omissions to induce Jinno International to enter into the parties' agreement and to continue to perform under the parties' agreement.

111.    Defendants intended for Jinno International to rely on their misrepresentations and omissions.

112.    Jinno International reasonably relied on Defendants' misrepresentations and omissions, as it paid Defendants' operating expenses in full and permitted Defendants to use the

JINNO Marks during the parties' relationship.  Had Jinno International known the true facts, Jinno International would have never paid Defendants' full operating expenses and allowed Defendants to use the JINNO Marks.  But Jinno International had no way of discovering these facts because Defendants took affirmative steps throughout the parties' relationship to hide the fact that they were doing business with other international fabric mills, as detailed herein.

113.    Defendants had a duty to disclose these material facts under the special facts doctrine.  First, Defendants had knowledge of this material information during the parties' discussions leading up to their agreement and throughout their relationship, as Defendants began facilitating sales for other international fabric mills as soon as the parties entered into their agreement and continued to do so until termination of the agreement.  Second, this material information was not readily available to Jinno International, as Defendants engaged in affirmative conduct that hid it from Jinno International.  Finally, Defendants knew that Jinno International was acting on the basis of its mistaken knowledge when it entered into the parties' agreement and throughout the parties' relationship, as Jinno International would never have paid all of Defendants' operating expenses and allowed Defendants to use the JINNO Marks had Jinno International known that Defendants were not acting exclusively for Jinno International's benefit.

114.    As a result of Defendants' fraud, Jinno International has sustained damages in an amount to be determined at trial, plus interest and costs.

115.    In addition, Defendants' fraudulent conduct was wanton, intentional, and willful and therefore warrants the imposition of punitive damages in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### (Breach of Contract – Exclusivity)

116.    Plaintiff hereby realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

117.    The agreement made between Jinno International and Defendants is a valid, binding, and enforceable contract between the parties.

118.    Pursuant to the parties' agreement, Defendants agreed to act exclusively as the sales agent for Jinno International, with all of their work for Jinno International's benefit, and not to facilitate sales on behalf of any other international fabric mills.

119.    Jinno International fully performed all of its duties and responsibilities pursuant to the parties' agreement.

120.    Defendants continuously breached the parties' agreement from in or about April 2012 until termination of the parties' relationship on or about March 28, 2018, because they did not exclusively work for Jinno International and in furtherance of Jinno International's business. Instead, Defendants facilitated sales for other international fabric mills throughout the entirety of the parties' relationship.

121.    As a result of Defendants' continuous breaches, Jinno International has sustained damages in an amount to be determined at trial, plus interest and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks a judgment against Defendants and in its favor awarding the following relief:

1.      On Jinno International's First, Second, Third, and Fourth Causes of Action:

A.      A preliminary and permanent injunction enjoining Defendants, their officers, agents, employees, representatives, servants, successors, assigns, and all persons, firms,

corporations, or entities either acting directly or indirectly in concert with them or under their direction, control, or authority, from:

      i.     Using, marketing, advertising, promoting, or selling any products in connection with the JINNO Marks, or any other mark that is confusingly similar to the JINNO Marks;

      ii.     Representing that Defendants are authorized agents of Jinno International for any purpose;

      iii.     Doing any other act or thing that (x) is likely to induce the mistaken belief that Jinno USA's products or services are in any way affiliated, connected, or associated with Jinno International or its services or other products, or (y) otherwise would damage Jinno International's goodwill and reputation;

      iv.     Unfairly competing with Jinno International in any manner whatsoever, including use of marks that are confusingly similar to the JINNO Marks; and

      v.     Causing a likelihood of confusion with respect to the JINNO Marks or injury to the business reputation of Jinno International.

B.     An order that Defendants file with the Court and serve on counsel for Plaintiff within 30 days after entry of any injunction issued by the Court in this action, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction, as provided by the Lanham Act, 15 U.S.C. § 1116;

C.     An award of damages that Plaintiff has sustained and profits that Defendants have derived as a result of their trademark infringement, false designation of origin, unfair competition, and other misconduct specified herein, in an amount to be determined at trial;

D.     An award of treble damages in accordance with 15 U.S.C. § 1117, and an award of exemplary or punitive damages as is deemed appropriate because of the willful and intentional nature of Defendants' conduct; and

E.     An award of interest and costs of this action together with attorneys' fees pursuant to 15 U.S.C. § 1117.

2.     On Jinno International's Fifth Cause of Action, an award in an amount to be determined at trial, but no less than $750,000, plus interest and costs, as damages that Jinno International has sustained due to Defendants' breach of the parties' agreement.

3.     On Jinno International's Sixth Cause of Action, an award in an amount to be determined at trial, but no less than $750,000, plus interest and costs, as damages that Jinno International has sustained due to Defendants' conversion, as well as an award of punitive damages in an amount to be determined at trial.

4.     On Jinno International's Seventh Cause of Action, an award in an amount to be determined at trial, but no less than $750,000, plus interest and costs, as damages that Jinno International has sustained due to Defendants' breach of their fiduciary duties, as well as an award of punitive damages in an amount to be determined at trial.

5.     On Jinno International's Eighth Cause of Action, an award in an amount to be determined at trial, plus interest and costs, as restitution to Jinno International for any unjust enrichment that Defendants received as a result of their unlawful conduct as complained of herein.

6.      On Jinno International's Ninth Cause of Action an award in an amount to be determined at trial, plus interest and costs, as damages that Jinno International has sustained due to Defendants' fraud, as well as an award of punitive damages in an amount to be determined at trial.

7.      On Jinno International's Tenth Cause of Action, an award in an amount to be determined at trial, plus interest and costs, as damages that Jinno International has sustained due to Defendants' continuous breaches of the parties agreement.

8.      On all Causes of Action, an award of Jinno International's interest, costs, and disbursements of this action.

9.      On all Causes of Action, an award of such other and further relief as may be just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff Jinno International demands trial by jury on all claims and issues so triable.


Dated: New York, New York
          May 14, 2018

                                                        DAVIS & GILBERT LLP


                                                        By:___/s/ Guy R. Cohen_____
                                                                Guy R. Cohen
                                                                gcohen@dglaw.com
                                                                Claudia G. Cohen
                                                                ccohen@dglaw.com

                                                                1740 Broadway
                                                                New York, NY 10019
                                                                (212) 468-4800
                                                                (212) 468-4888 fax

                                                                *Attorneys for Plaintiff Jinno International Co.*